UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-14235-CIV-MARRA/SELTZER

OCEAN HARBOUR SOUTH
CONDOMINIUM ASSOCIATION, INC,

      Plaintiff,

vs.

EMPIRE INDEMNITY INSURANCE
COMPANY,

      Defendant.

_____/

### OPINION AND ORDER ON PREJUDGMENT INTEREST

_____THIS CAUSE is before the Court upon Plaintiff's Memorandum of Law in Support of Motion for Prejudgment Interest, filed January 26, 2007.  (DE 116.)  The same day, Defendant filed its Opposition to Plaintiff's Supplement to its Motion for Entry of Partial Final Judgment Concerning Applicable Prejudgment Interest Rate. (DE 115.)  The Court is fully advised in the premises and the motions are now ripe for review.

### I.     Background

Ocean Harbour South Condominium Association ("Ocean Harbour") brought a one-count breach of contract action on June 27, 2005 in the Nineteenth Judicial Circuit of Florida in and for St. Lucie County, Florida, which Empire Indemnity Insurance Company ("Empire") removed to the United States District Court for the Southern District of Florida, Ft. Pierce Division, on August 5, 2005.  The breach of contract stemmed from a policy of insurance issued by Empire to Ocean Harbour providing for coverage from December 4, 2003, through December 4, 2004. After Hurricanes Francis and Jeanne struck the Florida Coast, Ocean Harbour brought this action

alleging Empire failed to pay Ocean Harbour for covered damages caused by the hurricanes. Trial of the contract action resulted in a jury verdict on October 17, 2006, in favor of Ocean Harbour and against Empire Indemnity in the amount of $5,959,763.00.  The Court subsequently requested the parties to brief the issue of determining  the date from which prejudgment interest should accrue and the resulting amount of prejudgment interest due to Ocean Harbour.

Ocean Harbour crafts two alternative arguments.  First, Ocean Harbour asserts that prejudgment interest should begin to accrue from September 26, 2005, the date of loss when all damage from the hurricanes were manifested. For support, Ocean Harbour cites to *Independent Fire Ins. Co. v. Lugassy*, 593 So.2d 570 (Fla. Dist. Ct. App. 1992).  Ocean Harbour recognizes that a line of cases have implicitly overruled *Lugassy*, holding that prejudgment interest should accrue from the date the debt was due, not the date of loss.  *Lumbermans Mutual Casualty Co. v. C. Percefull,* 638 So.2d 1026 (Fla. Dist. Ct. App. 1994) referred to as *Lumbermans I*, *Lumbermens Mutual Casualty Company, v. Percefull*, 653 So.2d 389 (Fla. 1995), referred to as *Lumbermens II,* and *Golden Door Jewelry Creations, Inc. v. Lloyds*, 117 F. 3d 1328 (11th Cir. 1997).  Ocean Harbour suggests that the Court should read these decisions as being limited to cases where a sworn proof of loss had been submitted by the insured[1], something Ocean Harbour argues it was unable to do because Empire allegedly never carried out its duty of sending Ocean Harbour a proof of loss statement and forms.[2]  As such, Ocean Harbour argues these cases are

---

[1]       Quixotically, Ocean Harbour later acknowledges in its brief that *Golden Door* is silent as to whether a proof of loss was actually submitted.  (Plaintiff's Brief at 8 n. 2.)

[2]       After receiving the proof of loss forms, the insured fills out the forms to identify proof of the insured's loss to the insurer.  The proof of loss statement filled out by Ocean Harbour is what Empire requires in order to investigate the claim and extent of damage.

2

inapplicable and the date of loss should serve as the date for commencing the calculation of prejudgment interest.

Ocean Harbour bases its alternative argument on its inability to file a proof of loss.  Since Empire did not provide Ocean Harbour the proof of loss forms as required by the insurance contract, Ocean Harbour implicitly argues, it did not have to provide Empire with a specific and precise claim for damage suffered.  Building on this premise, Ocean Harbour asserts that Empire's failure to provide the proof of loss renders the task of determining the precise prejudgment interest date subjective and impossible to identify; the subjective analysis would entail analyzing countless documents, conversations, and inspections to determine when Empire had definitive proof of Ocean Harbour's claim.  To remedy this problem ostensibly created by Empire, Ocean Harbour proposes an objective formula for the Court to employ: first, assume Empire had sent to Ocean Harbour the proof of loss forms the day after the second hurricane hit; second, assume Ocean Harbour waited the maximum amount time allowable under the contract to fill out the forms and return them (60 days) to Empire; third, assume Empire then waited the maximum amount of time allowable under the contract (20 days) to deny the claim.   Based on Ocean Harbour's calculations, this would equal eighty (80) days after September 26, 2004, namely December 15, 2004.  To justify using this formula, Ocean Harbour cites to the same cases, among others, it recognized as overturning *Lugassy*. Ocean Harbour argues by analogy that these cases stand for the principle that Empire's failure to carry out its duty of providing the proof of loss requires the prejudgment interest to begin when the proof of loss would have been submitted had it been received.

The Court requested that each party file its brief addressing prejudgment interest

3

simultaneously, therefore Empire's opposition does not address both arguments presented by Ocean Harbour.  Empire does dispute Ocean Harbour's first argument, asserting that *Lugassy* has been implicitly overruled by the Florida Supreme Court, as later acknowledged by the Eleventh Circuit, and that prejudgment interest should accrue from the date that proceeds would have been due  under the policy.  Empire argues that its failure to request a formal proof of loss did not dispense with the affirmative duties imposed by the policy on Ocean Harbour to present its claim to Empire.  Specifically, Empire cites to portions of the contract which impose a duty on the insured to give prompt notice of the loss of damage as well as a description of how, when, and where the loss occurred.

To determine the exact date when Ocean Harbour substantially presented its claim to Empire, Empire takes the Court on an in-depth journey through the record and arrives at August 8, 2005.  It was on this date, Empire argues, that numerous items, dated August 5, 2005 on Ocean Harbour's Preliminary Claim Summary, were presented to Empire in a meeting between Barry McGonical and Jim Bridges.  Empire contends this meeting represents the conclusive communication of Ocean Harbour's claim.  Empire then tacks on thirty days from that date as the earliest date that prejudgment interest should begin to accrue.

## II.    Discussion

### *The Method*

Prejudgment interest accrues from the date payment is due.  *Golden Door*, 117 F. 3d at 1341 (citing *Lumberman*s II., 653 So.2d at 390).  The Eleventh Circuit recognized the Florida Supreme Court's implicit reversal of *Lugassy* by quoting *Lumbermans II*, "The Supreme Court of Florida approved a lower court's determination that 'in contract actions interest is allowable from

the date that the debt is due.'" *Id.*   In rejecting the 'date of loss' as the date from which prejudgment interest accrues, *Golden Door* recognized that Florida courts have equated the date of the loss with the date that payments would have been due under the policy.  *Id.*  Ocean Harbour's argument that these cases can only be read in the context of cases where a proof of loss was submitted is off the mark.  Nowhere in either case does it state that this rule is contingent on a proof of loss being submitted.  Further, as Ocean Harbour acknowledges, *Golden Door* is silent on whether a proof of loss was actually submitted.  Therefore, the Court rejects Ocean Harbour's arguments and follows the rule articulated in *Lumbermans II* and recognized by the Eleventh Circuit in *Golden Door* that prejudgment interest accrues from the date the payment is due under the policy.  *Golden Door, 117 F. 3d at 1341.*

The Court also rejects Ocean Harbour's formula for determining the date payment was due.  The justification for the formula, as advanced by Ocean Harbour, is Empire's failure to provide Ocean Harbour with the proof of loss forms. The Court disagrees that this failure should alter the rule established in the case law. The salient provision of the insurance policy provides:

### 3.  Duties in the Event of Loss or Damage

a. You [the insured] must see that the following are done in the event of loss or damage to Covered Property:

(2) Give us [the insurer] prompt notice of the loss or damage.  Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(5) At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values, and amount of loss claimed.

(7) Send us a signed, sworn proof of loss containing the
information we request to investigate the claim.  You must do
this within 60 days after our request.  We will supply you with
the necessary forms.

Although subsection (7) requires the insured to return the proof of loss forms supplied by

the insurer, subsections two and three clearly require the insured to provide the insurer with

claim information, outside the proof of loss statement.  Therefore, the contract imposes duties on

each party, which each party neglected to fulfill.  The Court does not find that Empire's failure

carries greater culpability and thereby relieves Ocean Harbour of its obligations.  Rather, the

Court finds the insured must provide the insurer adequate notice of its claim, definitively

establishing the particulars of its claim, namely, the description of and the magnitude of loss.

This detailed communication acts as the equivalent of delivering the proof of loss.[3]  Once Empire

received this *essential* information- without which Empire could not make an informed decision

on payment of the loss -  Empire had thirty days to make its decision.[4]  When thirty days from

---

[3]      Delivering this information can be seen as substantially performing Ocean
Harbour's obligations under the contract.  "It is elementary that there must be at least a
substantial performance of conditions precedent in order to authorize a recovery as for
performance of a contract." *Racing Properties , L.P. v. Baldwin*, 885 So.2d 881, 883 (Fla. Dist.
Ct. App. 2004)(citing *Cohen v. Rothman*, 127 So.2d 143, 147 (Fla. Dist. Ct. App. 1961).

[4]      The next section in the insurance policy, "4. Loss Payment" is replaced in the
amendatory endorsement section labeled **FLORIDA CHANGES**.  The provision reads as
follows:

D.      The LOSS PAYMENT condition dealing with the number
of days within which we must pay for covered loss or damage
is replaced by the following:
Provided you have complied with all the terms of this Coverage
Part, we will pay for covered loss or damage:

(1) Within 20 days after we receive the sworn proof
of loss and reach written agreement with you; or

6

Empire's receipt of this information lapsed, payment was due and prejudgment interest began accruing.

The process of determining the date is not as difficult as Ocean Harbour suggests.  In fact, Empire accomplished this by carefully combing  through the record, alerting the Court to various communications between the parties, and identifying what it deemed to be the appropriate date. Rather than aiding the Court in this determination, Ocean Harbour provided the Court with a Hobson choice  – choosing either a date that is, as a matter of law, wrong, or a date that bears no reflation to the contractual obligations of the parties.  The cases to which Ocean Harbour cites for support offer none.

In *Warren v. Old Dominion Insurance Co.,* the insurer tried to avoid paying prejudgment interest by arguing that the claim was not due and payable until the insurer accepted the insured's claim as due and payable.  465 So.2d 1376, 1379 (Fla. Dist. Ct. App. 1985).  The court rejected the argument, interpreting the policy as setting the due date thirty days after the proof of loss was submitted by the insured, when the insurer could either deny or accept the claim.  *Id*.  The court would not allow the insurer to avoid the tolling of prejudgment interest simply by not responding to the proof of loss.  *Id.*   Here, Empire's failure to provide the proof of loss form is not analogous to Old Dominion's attempt to circumvent the tolling of prejudgment interest.  Empire is not attempting to avoid prejudgment interest based on its failure to provide the proof of loss statement; rather, Empire attempts to identify the date upon which it received the equivalent of

_____

> (2)  Within 30 days after we receive the sworn proof
>       of loss and:
>
>> (a) There is an entry of a final judgment; or
>> (b) There is a filing of an appraisal award with us.

7

the proof of loss, detailing the full extent of the claim. *Warren* does not suggest that the failure

to provide the proof of loss forms warrants the application of the formula Ocean Harbour

proposes.

Ocean Harbour's other cases are equally unhelpful. In *Lumbermans I*, the court noted

"[i]n the absence of the insurance company's furnishing Percefull [insured] with claim forms, the

bills sent by the insured sufficed as notice in accordance with the policy provision." 638 So.2d at

1029. The court concluded that prejudgment interest began to accrue from the date these bills

were sent, as the policy requires immediate payment upon receipt. *Id.* Therefore, *Lumbermans I*

supports this Court's decision to measure the due date 30 days from the date sufficient

information was sent to Empire. The Florida Supreme Court's affirmal of *Lumbermans I* in

*Lumbermans II* reinforces this underlying premise as Ocean Harbour notes in its brief,

"Lumberman's became indebted to Percefull when it failed to pay Percefull for the *claims*

*submitted* . . . Percefull was clearly entitled to prejudgment interest." (emphasis added.)

*Lumbermans II,* 653 So.2d at 390. Once again, the key lies in determining the date Ocean

Harbour substantially complied with its obligation to submit its claim.

Finally, Ocean Harbour cites to *Golden Door*. *Golden Door* stands for the premise

already discussed, that prejudgment begins to accrue from the date the debt is due, not the date of

loss. *Golden Door*, 117 F. 3d at 1341. *Golden Door* discusses the proof of loss only in the

context of stating that payment became due thirty days after the date the insured submitted its

proof of loss. *Id.* at 1342 n. 9. The court remanded the case to the lower court to determine the

date payment was due. *Id.* at 1342. The court did not state whether a proof of loss was

submitted, much less delve into the consequences of an insurer's failure to provide the proof of

loss forms.  Nothing in *Golden Door* disturbs this Court's decision to mark the prejudgment interest date thirty days after Empire rejected the claim.

### The Date

The Court finds that March 24, 2005, is the date Ocean Harbour substantially performed its obligations under the contract.   It was on this date that Ocean Harbour submitted its Preliminary Claim Summary to Empire.  In trial, Ocean Harbour's witness Ms. Gallagher confirmed that this was the date of the submission of "the entire claim package summarizing all of the documents they had been receiving since January in a formal claim package, and we sent that via fed-ex to Mark Hohle and Mr. Corey Brinker."  It was on this date, after having received the Preliminary Claim Summary, that Empire had sufficient information to make a reasonable judgment on the extent and validity of the claim.  From this date, Empire had thirty days to make an informed decision on whether it would provide payment for the loss.  Thus, the date prejudgement interest began to accrue was April 23, 2005.

The fact that Ocean Harbour continually updated this claim until August 8, 2005 does not delay the prejudgment date as Empire suggests.  The contract of insurance imposed obligations on the Ocean Harbour as detailed above.  The Court finds  Ocean Harbour substantially performed its obligations by providing Empire adequate notice of the extent of its claim on March 24, 2005.  Although Ocean Harbour continued to submit modifications to Ocean Harbour after March 24, 2005, Empire possessed sufficient information on March 24, 2005 to make an informed decision on coverage and perform its obligation of paying the claim within thirty days.

### III.    Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED** that prejudgment interest began to accrue on April 23, 2005.  The amount of prejudgment interest will be reflected in the Court's Partial Final Judgment.[5]

**DONE AND SIGNED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of April, 2007.

KENNETH A.  MARRA
United States District Judge

Copies furnished to:
All counsel of record

---

[5]      Final Judgment is entered in favor of Ocean Harbour South Condominium Association against Empire Indemnity Insurance Company in the amount of $5,944,763.00.  The prejudgment interest totaling $993,711.34 was calculated as follows.

2005    7% X $5,944,763 = $416,133.41.  $416,133.41/365 days = $1,140.09 per day

253 days (April 23 to December 31) X $ 1,140.09 =          $288,442.77

2006    9% X $5,944,763 =                                          $535,028.67

2007    11% X $5,944,763 = $653,923.        $653,923/365 days = $1,792.00 per day

95 days (January 1 to April 5) X $1792.00 =          $170,240.00

Total = $993,711.44

10